IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE
DISTRICT OF FLORIDA- TAMPA DIVISION

MARCOSQUARED, LLC;
MARCO MORANTE;
and CHRISTOPHER PSAILA,

     Plaintiffs,

vs.                               Case No.: 8:25-cv-3146-CEH-LSG

JAMES L. WILKES, II,

  Defendant.

                                      /

## PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

Plaintiffs, MARCOSQUARED, LLC, MARCO MORANTE, and CHRISTOPHER PSAILA, by and through his undersigned counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(6), respond to Defendant's Motion to Dismiss Plaintiffs' First Amended Complaint.

I.     **RESPONSE TO PLAINTIFF'S STATEMENT OF "FACTUAL BACKGROUND."**

Plaintiffs filed their initial complaint on November 14, 2025.  On November 28, 2025, this Court dismissed Plaintiffs' Complaint because of jurisdictional and shotgun pleading defects. The Court Ordered Plaintiffs to cure and correct the defects by December 19, 2025.  Plaintiffs filed their Amended Complaint ("FAC") on that date and engaged TBS Process Service, Inc. to locate and serve Defendant.

TBS first attempted service on January 15, 2026, at Defendant's business address, but was not allowed access to Defendant by Defendant's front desk monitor and was shown the door by said employee. Finally, on January 26, 2026, TBS process server Samantha Zimmerman approached a vehicle pulling into Defendant's residence's driveway. After first being told by Defendant's driver that Defendant "was not present" at Defendant's home. The driver, then, began to back out of the

driveway, paused, and returned to the driveway where Ms. Zimmerman stood. At that point, Defendant emerged from the vehicle and asked Ms. Zimmerman to "Please serve me." Doc. 15- Return of Service.

After being contacted by Defendant's counsel after service, Plaintiffs' counsel consented to Defendant's request for an extension to file a "responsive pleading" to the FAC. Doc. 19, ¶6. Then, Defendant filed his motion to dismiss. Doc. 21 filed on March 19, 2026. A MTD is not a "responsive pleading." *Taylor v. Greene*, 374 Fed. Appx. 949, 950 (11th Cir. 2010). Nevertheless, Plaintiff makes no objection to Defendant's right to file a Motion to Dismiss.

As to Defendant's characterizations of Plaintiffs' FAC, this Court is familiar with the FAC and it speaks for itself. However, one of Defendant's errors demands correction. Defendant argues that "Notably, there is no allegation that Defendant was ever attorney of record for any lawsuit related to Ms. Girardi."

First, nothing in Florida or Federal law requires that one who abuses process to be an attorney of record. The issue is whether Wilkes abused legal processes in hiring and supervising attorneys for Erika Jayne Girardi to execute the abusive strategy Wilkes devised to shield Erika Jayne from being held criminally and/or civilly responsible for her fraudulent conspiracies hatched with and for Tom Girardi.

Second, contrary to Defendant's assertion, Plaintiffs alleged that Wilkes was counsel and then co-counsel in *Morante v. Girardi*, et al., Case No. 24-ca-015118. Doc. 13, FAC, p. 14-15, ¶32 C. In that case, Wilkes started out as Defendants' sole attorney and filed DIN 23, Motion to Dismiss, on November 22, 2024. On March 21, 2025, the Court, in DIN 32, ordered Wilkes' motion to dismiss stricken for failure to cooperate with Plaintiff's counsel to set a hearing on the MTD and for failure to attend the Court's Case Management Conference. On April 10, 2025, Wilkes – still the sole attorney – moved to reconsider the Order. On May 9, 2025, Attorney Phillip Freidin entered his limited

appearance to argue for dismissal of Plaintiffs' Complaint and filed his Renewed, Combined Motion to Dismiss on May 14, 2025. See, DIN 35. On June 8, 2025, the trial court rescinded its March 21, 2015 Order, to allow Defendants to file a new motion to dismiss. On October 7, 2025, the Freidin Law Firm entered its general appearance for Defendants. Presently, Wilkes is on the Service List but his status as an attorney of record is undesignated. See, https://www2.miamidadeclerk.gov/ocs, Case No. 24-ca-015118.

## II.    LEGAL STANDARD FOR EVALUATING A MOTION TO DISMISS

Defendant correctly states the legal standard for evaluating a Motion to Dismiss. Here, Plaintiffs' claims have facial plausibility because Plaintiffs have pled sufficient factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

## III.    ARGUMENT: PLAINTIFFS HAVE ALLEGED THAT DEFENDANT WILKES DEVISED AND DIRECTED THE SCHEME TO ABUSE LEGAL PROCESS IN THE SEVERAL CASES INVOLVING ERIKA JAYNE GIRARDI AND THE CONSPIRACY TO USE PLAINTIFFS AS SCAPEGOATS.

Contrary to Wilkes characterization that Plaintiffs have "vaguely" alleged their case, Plaintiffs have alleged a detailed course abusing processes in the First Amended Complaint ("FAC") from Florida to California and back; and that those abuses were devised and implemented by Defendant Wilkes and, then, perpetrated by Wilkes and the lawyers he hired, managed, and controlled. Defendant's response is to deny his own responsibility and point his finger at the attorneys who did his bidding.

Fortunately, the vast majority of practicing attorneys take their roles as officers of the Court seriously.  When attorney misconduct occurs, it is most often in the confines of one case although American jurisprudence has seen how attorneys conspire with clients to abuse process as in as in the tobacco cases where attorneys fronted the bogus "scientific" institutes that proclaimed that smoking did not cause lung cancer. See, e.g. *United States v. Philip Morris USA Inc.*, 566 F.3d 1095 (D.C. Cir.

2009 and related cases.

Here, as cited *supra* in re: the Miami-Dade County Circuit Court Case, Wilkes filed a motion to dismiss, failed to cooperate in calling the motion up, and, then, failed to attend the case management conference that would have called him to task.  Then, he brought in respected attorneys to protect Wilkes from the bad acts that caused to trial court to strike his MTD. The end result was exactly what Wilkes wanted: a massive delay and a frustrated trial court trying to implement Florida Public Policy that every plaintiff and defendant should have access to a jury to decide their case on the merits.

Generally, trial courts begin each case presuming that attorneys intend to and will follow the rules. So, for example, when Wilkes hired respected attorneys to defend his failures in the Miami-Dade case, the trial court gave them the benefit of the doubt and reinstated their MTD.  However, when delay, lies, willful violations of the rules, and interference with judicial processes is implemented as a strategy to cover the tracks of clients who wrongfully accused the Plaintiffs of felonies and frauds, then that is abuse of process.

Plaintiffs have alleged exactly that by citation to cases and a sufficient number of bad acts in those cases to empanel a jury and let it decide. Indeed, in *Trump v. Clinton*, 653 F. Supp. 3d 1198, 1219 (S.D. Fla. 2023), the Court sanctioned Trump and his lead attorney, Alina Habba, with a fine and payment of attorneys' fees totaling nearly a Million Dollar after taking evidence from Trump/Habba's conduct in other cases:

> Thus, while a litigant's conduct in other cases would normally not be relevant, when the court is faced with a sanctions motion against a repeat offender, undeterred by admonitions, it has the authority to consider that litigant's outside conduct.

Id. at 1219.

In support, the *Trump* trial court cited *Johnson v. 27th Ave. Caraf, Inc.*, 9 F.4th 1300, 1313-14 (11th Cir. 2021) (finding district court had "inherent power to investigate the scope and extent" of litigant's misconduct that "threaten[ed] the integrity of the court.") and *O'Neal v. Allstate Indem. Ins.*

*Co. Inc., No. 20-14712, 2021 WL 4852222, at \*1 (11th Cir. Oct. 19, 2021),* which imposed monetary sanctions on a serial litigator, and entered a permanent pre-filing injunction that precluded him from making court filings without court approval. In so doing, the 11th Circuit cited the district court 's comprehensive examination of plaintiff's litigation history, cited dozens of Plaintiff's past cases, concluded that only two had merit, and provided examples of past cases where Plaintiff followed an abusive strategy similar to that employed in the case before the Court.

Here, Plaintiffs ask that a jury decide the money sanctions (damages) to be levied against Wilkes and that they be allowed to undertake the investigation. Here, Plaintiffs have alleged that Wilkes is Erika Jayne Girardi's serial defender in the several state and federal jurisdictions where Erika Jayne faces sanctions and that Wilkes, through a specific and wrongful litigation plan devised and controlled by Wilkes, continues to engage in bad conduct on his and Erika Jayne's behalf. This case is like *Trump* factually and only different in that the jury would decide liability and damages.

Wilkes publicly admitted to having spent millions of dollars on lawyers to defend Tom Girardi's wife. This, in itself, is sanctionable. Moreover, given that the California Bar Association failed for over thirty years to hear the complaints of Girardi's clients, and that Erika Jayne lived with Girardi for twenty of those years, it behooves this Court to allow Plaintiffs the right to continue their quest to clear their names and to seek damages from those who continue to deny Plaintiffs their rights to reclaim the professional statuses they once held. See, https://www.calbar.ca.gov/news/state-bar-california-releases-reports-detailing-past-unethical-conduct-handling-girardi-complaints, May 10, 2023, for the CBA's promise to implement additional enhancements to strengthen oversight, improve its discipline system and prevent conflicts of interest.

Thus, in arguing that Plaintiffs should be allowed to prosecute their FAC, Plaintiffs need not reallege the FAC. Initially, this Court admonished Plaintiffs for putting too much in their Complaint. Plaintiffs responded by filing the FAC. Nevertheless, Plaintiffs summarize their allegations that satisfy

the essential elements of abuse of process:

> **First,** Wilkes misused legal processes – motions in several proceedings, filing perjurious affidavits and declarations, wasteful interventions and bogus oppositions in the Girardi Bankruptcy proceedings, delaying tactics in all cases – in a wrongful manner, not proper in the regular conduct of a proceeding, to accomplish purposes (delay and obfuscation) for which the legal processes were not designed;

> **Second,** defendant acted with the ulterior motives of personal aggrandizement and to shield Erika Girardi from responsibility for her corrupt involvement in Girardi's schemes including those directed specifically at Plaintiffs;

> **Third,** a series of willful acts were committed by defendant, not authorized by the process and not proper in the regular conduct of the proceedings (see the judicial orders and comments cited herein and in the FAC);

> **Fourth**, Wilkes and his un-sued co-conspirators misuse of the legal processes caused injury, damage, loss or harm to plaintiffs.

3 Fed. Jury Prac. & Instr. § 121:50 (7th ed.), 3 Fed. Jury Prac. & Instr. § 121:50 (7th ed.).

Here, process issued when Erika Jayne and American Express successfully convinced the U.S. Attorney in California to indict Chris Psaila without evidence and continued until the U.S. Attorney found dismissed the charges. At that point in 2019-2020, Plaintiffs began to reclaim their lives. But Wilkes stepped in, and to Plaintiff's detriment, took charge and implemented his delay and destruct defense strategy to shield Erika Jayne from criminal and civil liability. While appearing in the national media, Wilkes perpetuated the story that Erika Jayne and her assistants were innocent victims, that Plaintiffs escaped criminal liability "through a technicality," and that Erika Jayne stuck by her story.

Instead of righting things with Plaintiffs through apology and payment of lost earnings, Wilkes waged his corrupt defense in the Courts and on social media, including, coaching Erika Jayne in her role as a Real Housewife of Beverly Hills and as a social media celebrity to commit perjury by continuing to accuse Plaintiffs, and, particularly, Psaila, of criminal conduct. Thus, Plaintiffs have more than adequately alleged the perversion of legal processes going on for years after the legal processes against Psaila allowed Plaintiffs access to the protections of our legal system. See, e.g., *O'Malley-Gordon v. United States*, No. 218CV533FTM29NPM, 2019 WL 4673814, at *2 (M.D. Fla.

Sept. 25, 2019).

In *Verdon v. Song*, 251 So. 3d 256, 258–59 (Fla. 5th DCA 2018), the Husband alleged the Wife's abuse of process began after the State had filed formal charges against him when Wife thereafter filed a false affidavit and a request for prosecution. That is, the Wife attempted to extort Husband by using the pending criminal proceedings to gain use of his credit card. Husband was not required to allege that Wife expressly connected the use of Husband's credit card to the pending criminal proceedings.

Here, Plaintiffs allege Wilkes' abuse of processes began after the criminal charges against Psaila, and implicating Morante and their company in felonious acts, were dismissed and that Wilkes suborned perjury, instituted frivolous and numerous delaying tactics in defense of a series of lawsuits and investigations that targeted Erika Jayne and her assistants in order to intimidate Plaintiffs from proving that Erika Jayne lied about her criminal allegations against Plaintiffs and only made those allegations so that she and Tom Girardi could obtain money from a civilly and criminally complicit American Express. Where a person initiates legal processes without reasonable basis in law and fact – and is meant to intimidate another – then there has been an abuse of process. *Scozari v. Barone*, 546 So. 2d 750, 752 (Fla. 3d DCA 1989).

## CONCLUSION

*Hillard v. City of Largo*, No. 2D2024-2067, 2025 WL 2942361, at *1 (Fla. 2d DCA Oct. 17, 2025) sanctioned Attorney Hilliard because he instigated a course of dilatory and bad faith conduct completely unabated throughout the course of the proceedings. The record the Second DCA reviewed in *Hillard* was replete with last minute, dilatory filings, and bad faith pleadings and assertions. In short, conduct totally unbecoming a member of the Florida Bar.

Here, Plaintiffs allege that Wilkes instigated the same bad faith conduct in a series of lawsuits and that he funded his tortious activities by unlawfully taking federal tax dollars that were supposed to pay his staff during Covid. Instead of laid-off employees getting assistance from American

taxpayers, Wilkes used the Covid money to hire lawyers and pay for Erika Jayne's lavish lifestyle so that she could continue as a RHOBH and a social media celebrity.

For all of the foregoing reasons, Plaintiffs respectfully request that this Honorable Court deny Defendant's Motion to Dismiss Plaintiffs' FAC.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 2, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

By:   *Isl Bruce B. Bealke.*