UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARCOSQUARED, LLC, MARCO
MORANTE, and CHRISTOPHER
PSAILA,

      Plaintiffs,

v.                                                            Case No: 8:25-cv-3146-CEH-LSG

JAMES L. WILKES, II,

      Defendant.

_____

## ORDER

This matter is before the Court on Defendant's Motion to Dismiss First Amended Complaint (Doc. 21), Plaintiffs' response in opposition (Doc. 26), and Defendant's reply (Doc. 34). In the motion, Defendant James L. Wilkes, II, seeks dismissal of the First Amended Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6) and because it is a shotgun pleading. The Court, having reviewed the motion and being fully advised in the premises, will grant the motion to dismiss and allow Plaintiffs leave to file a Second Amended Complaint.

## I.    BACKGROUND[1]

---

[1] The following statement of facts is derived from the First Amended Complaint (Doc. 13), the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss. *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F.2d 989, 994 (11th Cir. 1983).

Plaintiffs Marco Morante ("Morante") and Christopher Psaila ("Psaila") are the owners and co-founders of Plaintiff Marcosquared, LLC, a California limited liability company. Doc. 13 ¶ 4. Defendant James L. Wilkes, II, ("Defendant" or "Wilkes") is a Tampa attorney who has a nationwide torts practice and who is a "long-time friend" of Erika Girardi ("Ms. Girardi"). *Id.* ¶¶ 6, 7. Ms. Girardi's husband, Tom Girardi, was a famous California attorney who is currently incarcerated after having been convicted of operating a "Ponzi scheme." *Id.* ¶ 7.

Plaintiffs allege Tom Girardi conspired with Ms. Girardi to make credit card fraud complaints against Plaintiffs as a pretext to compel American Express to refund nearly $800,000 to Tom Girardi's law practice, Girardi Keese, as part of his fraudulent scheme. *Id.* ¶ 16. Prior to Tom Girardi's criminal conviction, Wilkes advised Ms. Girardi to distance herself from her husband to avoid what could be viewed as her complicity in her husband's fraud, embezzlement, and theft. *Id.* ¶ 7. According to Plaintiffs, Wilkes employed a strategy based on "denial and misinformation" in the media and in the various state and federal lawsuits *Id*. Wilkes's strategy played out across three specific lawsuits, although Plaintiffs allege this list is non-exhaustive. *Id.* ¶ 32.

**A. <u>Psaila v. Erika Girardi</u>, *et al.*, Case No. 2:23-cv-07120, United States District Court for the Central District of California**

In an action filed in California federal court, Psaila sued Ms. Girardi for falsely accusing him of credit card fraud. Plaintiffs allege here that Wilkes paid for and supervised Ms. Girardi's defense attorneys in that action and drafted a "perjurious

affidavit" from Ms. Girardi, Minden, and Ribatallada to assist them in dismissing the Psaila complaint.[2] *Id.* ¶ 32A. Wilkes caused Ms. Girardi to submit a sworn affidavit stating that she believed Plaintiffs had defrauded her and that she made the accusations independently. *Id.* ¶ 21. Since filing that affidavit, Wilkes has shielded Ms. Girardi from appearing for depositions or responding to discovery. *Id.* Plaintiffs allege that Wilkes used the litigation process to intimidate, threaten, coerce, and extort Plaintiffs, with the purpose of preventing them from pursuing claims against Ms. Girardi for making false allegations of credit card fraud. *Id.* ¶ 13. Wilkes further pressured Plaintiffs to abandon their claims by deliberately driving up legal fees and litigation costs. *Id.* ¶ 32A.

### B. Sheldon Law Offices v. Girardi, EJ Global, *et al.*, Case No. 20STCV47160, in the Superior Court of the State of California for the County of Los Angeles, Central District

According to Plaintiffs, Wilkes paid for and supervised Ms. Girardi's defense attorneys in the *Sheldon Law Offices* action. *Id.* ¶ 32B. Prior to her deposition in that case, Wilkes advised Ms. Girardi that she would need to affirm the following: (1) maintain the truthfulness of her fraud allegations against Plaintiffs, (2) Defendant's law firm was billing her for legal services, and (3) she had no knowledge of Tom Girardi's criminal conduct. *Id.*

### C. Morante v. Girardi, *et al.*, Case No. 2024-CA-0151118, in the Circuit Court for Miami-Dade County, Florida

---

[2] Minden and Ribatallada are never fully identified in the First Amended Complaint. It is unclear from the First Amended Complaint who these individuals are or what role they allegedly played in the events at issue.

Wilkes, serving as co-counsel in the Miami state court action, allegedly paid for, directed, and supervised his co-counsel to ignore Plaintiffs' allegations regarding a conspiracy by Ms. Girardi to defame Plaintiff Morante. *Id.* ¶ 32C. Wilkes failed to respond to discovery requests and declined to answer discovery ordered by the trial judge. *Id.* ¶ 43. Wilkes also violated Florida's Rules Regulating the Bar by financially supporting Ms. Girardi while she was also a client. *Id.* ¶¶ 34, 41.

In addition to these three cases, Plaintiffs allege Wilkes hired attorney Evan Borges to assert claims in multiple bankruptcy proceedings in order to promote a false narrative concerning Ms. Girardi. *Id.* ¶ 22. Plaintiffs further allege that Borges implemented Wilkes's directives to prevent Ms. Girardi from cooperating with efforts to recover funds and instead to obstruct and obfuscate the bankruptcy proceedings as much as possible. *Id.* ¶ 23. Plaintiffs also allege Wilkes fraudulently acquired Paycheck Protection Program ("PPP") loans to fund Ms. Girardi's legal and other expenses. *Id.* ¶¶ 8–12.

In their Amended Complaint, Plaintiffs assert two claims against Wilkes: abuse of process (Count I) and conspiracy to abuse process (Count II). Wilkes moves to dismiss the First Amended Complaint. Doc. 21 at 1. First, he claims the First Amended Complaint is a shotgun pleading, as it fails to plead allegations in a non-conclusory manner and contains counts which adopt all allegations of the proceeding counts. *Id.* at 3. Second, Wilkes moves to dismiss under Fed. R. Civ. P. 12(b)(6) arguing that Plaintiffs have failed to state a claim for abuse of process, noting that

Wilkes was not an attorney of record on the various lawsuits[3] and otherwise was not directly responsible for other attorneys' actions. *Id.* at 5–6. In response, Plaintiffs contend they have adequately stated a claim for abuse of process that was perpetrated by Wilkes and the lawyers he hired, managed and controlled. Doc. 26 at 3.

## II.   LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)). Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient. *Id*. (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Furthermore, mere naked assertions are not sufficient. *Id*. A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id*. (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted). The court, however, is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id*.

## III.   DISCUSSION

### A.  Abuse of Process Claim

---

[3] Wilkes contends he was not an attorney of record in the underlying proceedings. At the motion to dismiss stage, however, the Court must accept Plaintiffs' well-pleaded allegations as true. Regardless, Wilkes points to no authority establishing that attorney-of-record status is a required element of an abuse of process claim.

In Count I of the Amended Complaint, Plaintiffs assert a claim against Wilkes for abuse of process. Florida courts have identified three elements necessary to state a claim for abuse of process under Florida law: "(1) that the defendant made an illegal, improper, or perverted use of process; (2) that the defendant had ulterior motives or purposes in exercising such illegal, improper, or perverted use of process; and (3) that, as a result of such action on the part of the defendant, the plaintiff suffered damage." *S & I Investments v. Payless Flea Mkt., Inc.,* 36 So. 3d 909, 917 (Fla. 4th DCA 2010).

Under the first element, a plaintiff must sufficiently plead that the defendant has committed a "willful and intentional misuse of process" in a manner or for a purpose not intended by law. *Peckins v. Kaye*, 443 So.2d 1025, 1026 (Fla. 2d DCA 1983). The plaintiff must also show that the defendant misused the process for some collateral purpose. *Id.* Even where the process is issued primarily to harass the plaintiff, an abuse of process is not established unless the defendant used the process to accomplish a purpose collateral to the cause of action. *Id.*; *Biondo v. Powers,* 805 So.2d 67, 69 (Fla. 4th DCA 2002) (where the process was used to accomplish the result for which it was intended, "regardless of an incidental or concurrent motive of spite or ulterior purpose," there is no abuse of process); *Cazares v. Church of Scientology of Cal., Inc.,* 444 So.2d 442, 444 (Fla. 5th DCA 1983) ("[A]buse of process requires an act constituting the misuse of process after it issues. The maliciousness or lack of foundation of the asserted cause of action itself is actually irrelevant to the tort of abuse of process.") Thus, an abuse of process claim turns on whether the plaintiff can show that the

6

defendant misused the process after it was issued in order to exert leverage against the plaintiff. *Marty v. Gresh*, 501 So. 2d 87, 89 (Fla. 1st DCA 1987).

In Count I, Plaintiffs allege Wilkes knowingly violated Florida's Bar Rules by financially supporting Ms. Girardi using unlawfully obtained PPP funds. Doc. 13 ¶ 41. Plaintiffs further allege that in representing Ms. Girardi (formally and informally), Wilkes directed counsel to stonewall, obfuscate, delay, and obscure the truth that the U.S. Attorney dismissed the criminal complaint against Psaila on the merits and that Plaintiffs did not commit credit card fraud. *Id.* ¶ 42. Plaintiffs assert that Wilkes abused the discovery process in the Miami state court case by declining to answer discovery ordered by the trial judge in that action. *Id.* ¶ 43. Plaintiffs allege that Wilkes abused the administration of justice by making baseless claims meant to impede the litigation processes and aggrandize Ms. Girardi in the nation's media. *Id.* ¶ 44. Plaintiffs allege that Wilkes' actions and inactions in manipulating the legal processes and causing others to manipulate the legal processes in the various referenced cases caused Plaintiffs to suffer economic damages in the form of lost business, lost profits, and legal fees, in connection with Ms. Girardi's "continued attacks on Plaintiffs' business practices, veracity, and characters." *Id.* ¶ 45. While Plaintiffs allege the existence of economic damages, their conclusory and irrelevant allegations otherwise fall far short of stating any of the other elements of a claim for abuse of process.

Plaintiffs fail to adequately allege an illegal, improper, or perverted use of process. The Plaintiffs lay out three specific instances—described as non-exhaustive— in which Defendant "abuse[d] and misuse[d]" the legal process. Doc. 13 ¶ 32.

In the first instance, in *Psaila v. Erika Girardi et al.*, Plaintiffs claim Defendant attempted to pressure them to drop their action by "running up legal fees and costs" and by drafting "perjurious affidavits" for Ms. Girardi and others. *Id.* ¶ 32A. Even accepting these allegations as true, they fail as a matter of law to support a claim of abuse of process.

Neither allegation demonstrates that process was used for anything other than its authorized purpose. Plaintiffs themselves allege the affidavits were drafted to support Ms. Girardi's efforts to dismiss the complaint—an authorized conclusion of defense litigation. "There is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Bothmann v. Harrington*, 458 So. 2d 1163, 1169 n.8 (Fla. 3d DCA 1984). An attorney assisting his client in seeking dismissal of a complaint is performing a core function of defense counsel, not abusing process.

Further, Plaintiffs describe the "perjurious affidavits" as only statements of Ms. Girardi's belief and motive, specifically that she believed she had been defrauded and that she acted on her own accord making criminal accusations. The court need not accept as true Plaintiffs' conclusory label of "perjurious" as a factual allegation. *Twombly*, 550 U.S. at 555. Plaintiffs do not assert any non-conclusory facts demonstrating that these actions were taken for a purpose for which the process "was not designed." *Bothmann*, 458 So. 2d at 1169. Moreover, "[t]he filing of an affidavit in state court by the Defendant cannot . . . constitute abuse of civil legal process without

8

anything further." *Antoine v. State Farm Mut. Auto. Ins. Co.*, 662 F. Supp. 2d 1318, 1325 (M.D. Fla. 2009).

In the second instance, Plaintiffs allege Wilkes paid for and supervised Ms. Girardi's attorneys in a California state case (*Sheldon Law Offices v. Girardi, EJ Global et al.,*) and also advised her prior to a deposition that she would need to confirm certain facts regarding other suits between Ms. Girardi and the Plaintiffs. Doc. 13 ¶ 32B. Plaintiffs cite to a Florida Rule Regulating the Bar, 4-1.8(e), which states that a lawyer may not financially support a client in litigation, except in certain limited circumstances. *Id.* ¶ 34; *see also* R. Regulating Fla. Bar 4-1.8(e). Plaintiffs allege an improper financial relationship between Wilkes and Ms. Girardi, but while such allegations may give rise to a potential ethical violation and Bar complaint, these facts do not form the basis for an "abuse of process" claim.

The tort of abuse of process does not turn on the nature of the relationship between the defendant and the defendant's client. It is concerned with whether the defendant misused process itself against a plaintiff after it was served. *Marty*, 501 So. 2d at 89. Plaintiffs allege no facts showing that Wilkes leveraged the California proceeding as a mechanism to compel Plaintiffs to take some action they could not otherwise be legally required to take. *See Miami Herald Pub. Co., Div. of Knight-Ridder Newsp., Inc. v. Ferre*, 636 F. Supp. 970, 975 (S.D. Fla. 1985). As explained in *Miami Herald*, for a plaintiff to state a claim for abuse of process, the plaintiff must allege that defendant took some action to coerce plaintiffs into taking some collateral action not properly involved in the proceeding. *Id.* Here, Plaintiffs allege only that Wilkes funded

and supervised counsel in a case to which Plaintiffs were not even parties. Doc. 13 ¶ 32B. Funding and supervising litigation, *even if* that litigation affected Plaintiffs, is not the kind of coercive, collateral pressure that a claim of abuse of process is designed to remedy, in the absence of some conduct that compelled Plaintiffs to take some action they could not otherwise be legally required to take.

Although Florida case law has not explicitly stated that the plaintiff must have been a party to the process, it does require that plaintiff must have suffered harm as a result of the misuse of process—a requirement that is much more difficult to establish as a non-party. *See S & I Investments*, 36 So. 3d at 917; *see also McMurray v. U-Haul Co., Inc.*, 425 So. 2d 1208, 1209 n.1 (Fla. 4th DCA 1983) ("An abuse of process arises only when there has been a perversion of court processes. . . which compels *the party against whom it has been used* to do some collateral thing which he could not legally and regularly be compelled to do." (emphasis added)). Because Plaintiffs were not parties to the California proceeding and allege no facts showing that any process was directed at or used against them for an ulterior purpose, they fail to establish the necessary elements of an abuse of process claim arising from that litigation.

Finally, in the third instance, in *Morante v. Girardi, et al.*, Plaintiffs claim Wilkes failed to respond to discovery requests. Doc. 13 ¶ 32C. This does not constitute abuse of process. It may reflect litigation misconduct, which courts will address through procedural rules and sanctions, not tort liability. While discovery abuses should not be tolerated, pretrial discovery violations are generally matters for the trial court to assess and remedy through appropriate sanctions in the action in which the discovery

violations occur. *See Amlan, Inc. v. Detroit Diesel Corp.*, 651 So. 2d 701, 703 (Fla. 4th DCA 1995); *see also* RESTATEMENT (THIRD) OF TORTS: LIAB. FOR ECON. HARM § 26 cmt. C (A.L.I. 2020) (explaining sanctions are an appropriate remedy for discovery-related misconduct that does not involve process). To the extent Plaintiffs disagree with the Miami state court judge's legal determinations regarding alleged discovery violations in that action, those issues may be raised through appeal of those rulings, not through a separate lawsuit asserting abuse of process.

The other assertions in the First Amended Complaint lack specificity and connection to Wilkes or to the claim of abuse of process. For example, Plaintiffs allege Wilkes directed another attorney, Evan Borges, to obstruct and obfuscate various bankruptcy proceedings, and rely on allegations from the Trustee regarding Ms. Girardi's "baseless and relentless opposition," which purportedly required the Trustee to devote significant time and resources to defending the Estate. Doc. 13 ¶ 22. Plaintiffs were not parties to the bankruptcy proceedings, and as discussed above, it is difficult to establish that process was used against a non-party. *See Miami Herald*, 636 F. Supp. at 975. Plaintiffs fail to connect either allegation in any meaningful way to themselves. Additionally, even taken at face value, these allegations describe potential litigation misconduct, not abuse of process. As previously stated, obstructive or burdensome litigation misconduct is addressed through procedural mechanisms and sanctions in that action—not through tort liability. Plaintiffs allege no facts showing that the bankruptcy proceedings were used as a mechanism to compel them to do anything

11

they could not otherwise be legally required to do. *Id.*; *see also Bothmann*, 458 So. 2d at 1169.

Regarding the second element that defendant had ulterior motives, Plaintiffs claim Wilkes's ulterior motive was to "move[] himself into the same societal standing[] as [Tom Girardi]" and become "a central part of Erika's nationwide narrative." Doc. 13 ¶ 39. Plaintiffs do not identify any specific act using the process of a judicial proceeding to compel Plaintiffs to do or refrain from doing anything they could not otherwise be legally compelled to do. Under Florida law, even a "pure spite motive is not sufficient where process is used only to accomplish its intended purpose." *Bothmann*, 458 So. 2d at 1169, n.8. A desire for social status is even further removed from the tort's requirements than spite.

In their Response to Defendant's Motion to Dismiss (Doc. 26), Plaintiffs claim that this case is factually similar to *Trump v. Clinton*, 653 F. Supp. 3d 1198 (S.D. Fla. 2023). In *Trump*, then-former President Donald J. Trump filed a 2022 lawsuit alleging that Hillary Clinton and others engaged in a coordinated effort to disseminate false information during the 2016 Presidential Election. After dismissing the expansive, multi-defendant complaint as an impermissible "shotgun pleading" that failed to state viable claims, the court later considered defendants' motion for sanctions. The court observed that a litigant's conduct in other cases may be relevant when it is "faced with a sanctions motion against a repeat offender." *Id.* at 1219. Plaintiffs also analogize the present case to *Hillard v. City of Largo*, in which the court affirmed the lower court's sanctions order against an attorney, finding that he engaged in persistent bad faith and

12

dilatory conduct throughout the proceedings. No. 2D2024-2067, 2025 WL 2942361 (Fla. 2d DCA 2025).

Plaintiffs' reliance on *Trump* and *Hillard*, however, is misplaced and further supports dismissal. In both cases, the procedural posture of the court was a motion for sanctions which arose within the same proceeding in which the alleged litigation misconduct occurred. Here, by contrast, Plaintiffs assert an entirely new cause of action in a separate lawsuit. To the extent Plaintiffs allege "abuse of process" based on conduct that occurred within underlying litigation, the appropriate remedy is a sanctions motion in the court where that alleged misconduct occurred.

Sanctions for litigation misconduct and abuse of process are distinct remedies. Sanctions are a procedural tool by which a court polices conduct within its own proceedings, while abuse of process is an independent tort requiring a showing that the defendant misused a legal process to accomplish a purpose collateral to the litigation. Plaintiffs' allegations of discovery misconduct and litigation abuses are precisely the type of conduct addressed through sanctions in the originating court, not through a separate abuse of process lawsuit which "turns on. . . sufficient proof that [the defendant] misused process after it was served so as to exert some form of leverage over [the plaintiff]." *Marty*, 501 So. 2d at 89. Because Plaintiffs' First Amended Complaint fails to allege facts to state a claim for abuse of process, Count I is due to be dismissed.

13

### B. Conspiracy to Abuse Process

To state a claim for civil conspiracy in Florida, a plaintiff must allege: (a) an agreement between two or more parties, (b) to do an unlawful act or to do a lawful act by unlawful means, (c) an overt act in furtherance of the conspiracy, and (d) resulting damage. *Raimi v. Furlong*, 702 So. 2d 1273, 1284 (Fla. 3d DCA 1997). Conclusory or general allegations of conspiracy are insufficient, and the complaint must set forth clear, positive, and specific facts establishing each element. *World Class Yachts, Inc. v. Murphy*, 731 So. 2d 798, 799 (Fla. 4th DCA 1999).

The conspiracy claim fails for two independent reasons. First, because the underlying abuse of process claim is not plausibly alleged, the conspiracy claim necessarily fails with it. "[A]s the underlying tort claims fail, . . . the claims for conspiracy would also fail." *Maale v. Kirchgessner*, No. 08-80131-CIV, 2009 WL 10669512, at *4 (S.D. Fla. Sept. 3, 2009) (citing *Churruca v. Miami Jai-Alai, Inc.*, 353 So. 2d 547, 550 (Fla. 1977) (there exists no independent tort for conspiracy)).

Second, even if the underlying tort were adequately alleged, the conspiracy claim independently fails for lack of factual support. Plaintiffs allege that Wilkes "formed a conspiracy" with Ms. Girardi, Minden, Ribatallada, Evan Borges, and "others not named herein," yet they offer no factual allegations explaining how the purported conspiracy was formed or carried out. Doc. 13 ¶ 47. Plaintiffs fail to identify any agreement among the alleged conspirators or any allegation as to the damage Plaintiffs suffered as a result of the acts alleged to have been done under the conspiracy. As stated above, conclusory or general allegations of conspiracy are insufficient. The

14

complaint must set forth clear, positive, and specific facts establishing each element. *World Class Yachts*, 731 So. 2d at 799.

### C. Shotgun Pleading

Wilkes alternatively argues the First Amended Complaint should be dismissed as a shotgun pleading. Doc. 21 at 3. The Eleventh Circuit has identified four types of shotgun pleadings, two of which are relevant here. *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1321 (11th Cir. 2015). The most common occurs when each count incorporates all preceding counts by reference, causing later counts to accumulate every allegation in the complaint. *Id.* The second type is a complaint riddled with vague, conclusory, and irrelevant allegations untethered to any specific cause of action. *Id.* All types of shotgun pleadings are deficient because "they fail to one degree or another . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id. at* 1323.

Defendants contend the complaint constitutes a shotgun pleading because each count incorporates the allegations of all preceding counts. This argument is unavailing. The second count alleges civil conspiracy, and Florida does not recognize civil conspiracy as a freestanding tort. *Banco de los Trabajadores v. Cortez Moreno*, 237 So. 3d 1127, 1136 (Fla. 3d DCA 2018). Rather, the essence of a civil conspiracy claim is not the conspiracy itself but the underlying civil wrong committed pursuant to it. *Id.* Therefore, by its very nature, a conspiracy count will necessarily incorporate the preceding tort count upon which it is based. Thus, the Court disagrees, in this

15

circumstance, that the Amended Complaint is a shotgun pleading because Count II incorporates Count I. Notwithstanding, the Amended Complaint is still a shotgun pleading for a different reason.

Despite the Court's prior admonition against shotgun pleadings, the second type of shotgun pleading, as described in *Weiland*, is still prevalent in the First Amended Complaint. Plaintiffs reference, vaguely, numerous lawsuits, both civil and criminal, in which they claim process was abused.[4] Plaintiffs devote five paragraphs of the First Amended Complaint to alleged PPP loan fraud, which has no clear connection to the claim of abuse of process. Doc. 13 ¶¶ 8–12. Similarly, paragraphs discussing Tom Girardi, Ms. Girardi's reality TV career, and her marital status are immaterial facts with no obvious connection to whether process was misused against Plaintiffs and is seemingly only for purposes of sensationalism, scandal, and drama.[5]

---

[4] While Plaintiffs identify four specific lawsuits (*Psaila v. Erika Girardi et al.*, Case No. 2:23-cv-07120, Central District of California; *Sheldon Law Offices v. Girardi, EJ Global et al.*, Case No. 20STCV47160, Los Angeles Superior Court; *Morante v. Girardi et al.*, Case No. 2024-CA-015118, Miami-Dade Circuit Court; and Girardi bankruptcy proceedings, Case No. 20-bk-21022, Central District of California Bankruptcy Court), they also reference "several" bankruptcy cases, divorce proceedings, criminal cases, and "many state and federal" lawsuits without specifics. *See* Doc. 13 ¶¶ 7, 10, 17, 22. It is still unclear from the First Amended Complaint which of these cases Plaintiffs claim serves as the basis for the abuse of process claim, failing to "give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Weiland,* 792 F.3d at 1323.

[5] For example, the First Amended Complaint recounts Tom Girardi's Ponzi scheme, criminal conviction, and his relationship with Wilkes (Doc. 13 ¶¶ 7 and 17); details of Ms. Girardi's entertainment career on *The Real Housewives of Beverly Hills* and Tom Girardi's use of embezzled funds to finance her performance persona (*id.* ¶ 12); reproduces at length a television interview discussing Ms. Girardi's public image in connection with an ABC documentary (*id.* ¶ 26); and alleges that Ms. Girardi is falsely representing herself as unmarried in order to preserve spousal privilege and prevent Tom Girardi from testifying against her (*id.* ¶ 18). These irrelevant inclusions are particularly notable given that neither Tom Girardi nor Erika Girardi is a defendant in this action.

These vague and irrelevant references included in the First Amended Complaint lead to tangent-like sentences and paragraphs, leaving the Defendant and the Court unclear on the actual basis of Plaintiffs' claims. Thus, the First Amended Complaint, while less egregious than the original Complaint (Doc. 1), still constitutes a shotgun pleading.

### D. Leave to Amend

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading "shall be freely given when justice so requires." And "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Foman v. Davis*, 371 U.S. 178, 182 (1962). It is within the discretion of the Court to grant or deny an opportunity to amend. *See id.*

While the Court is not necessarily confident that Plaintiffs will be able to state a claim against this Defendant for abuse of process and conspiracy to abuse process, the Court will grant Plaintiffs leave to amend as they did not previously have the benefit of the Court's analysis of the substantive causes of action, which they now have.

## IV. CONCLUSION

Because Plaintiffs' First Amended Complaint fails to state a claim for abuse of process and conspiracy to abuse process and because the First Amended Complaint

17

remains a shotgun pleading, the Court will grant Defendant's motion to dismiss. The Court will allow Plaintiffs one final opportunity to amend their complaint. Accordingly, it is hereby

**ORDERED:**

1.    Defendant's Motion to Dismiss First Amended Complaint (Doc. 21) is **granted**.

2.    If they choose, Plaintiffs may file a Second Amended Complaint within **fourteen (14) days** of the date of this Order which corrects the deficiencies referenced herein.

3.    If Plaintiffs fail to file a Second Amended Complaint within the time permitted, this action will be dismissed without prejudice and without further notice.

**DONE AND ORDERED** in Tampa, Florida on July 2, 2026.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:
Counsel of Record
Unrepresented Parties

18