IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE
DISTRICT OF FLORIDA- TAMPA DIVISION

MARCOSQUARED, LLC;
MARCO MORANTE;
and CHRISTOPHER PSAILA,

Plaintiffs,

vs. Case No.: 8:25-cv-3146-CEH-LSG

JAMES L. WILKES, II,

Defendant.
_______________________________________/

**PLAINTIFFS' RESPONSE TO DEFENDANT'S MOTION TO DISMISS SECOND AMENDED COMPLAINT and MOTION TO STRIKE PLAINTIFFS' SUGGESTIONS IN SUPPORT OF SECOND AMENDED COMPLAINT**

Plaintiffs, MARCOSQUARED, LLC, MARCO MORANTE, and CHRISTOPHER PSAILA, by and through their undersigned counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(6), respond to Defendant's Motion to Dismiss Plaintiffs' Second Amended Complaint and Defendant's Motion to Strike Plaintiffs' Suggestions in Support of their Second Amended Complaint and state as follows:

## I. FACTUAL BACKGROUND.

Defendant Wilkes has yet to answer any of the allegations that Plaintiffs make against him. However, when Wilkes is required to answer, he will not contest that:

a. Erika Girardi, and others associated with Erika, accused Plaintiffs of criminal conduct (credit card fraud) in 2016. American Express aided and abetted Erika and Tom Girardi by joining in the criminal complaint and issuing a full refund for all of Erika's purchases from and payments to Plaintiffs during the several years of their artistic collaborations even though Erika exclusively worked with Plaintiffs for the design and manufacture of her costumes.

b. After Erika and American Express filed their credit-card fraud criminal complaints in late 2016, the United States Attorney's Office for the Central District of California indicted Psaila in early 2017.

c. In 2019, the mass of client and attorney complaints about Tom Girardi's scandalous treatment of clients and co-counsel attorneys began to expose the likelihood that Tom Girardi was an embezzler. During that time, Wilkes counseled both Tom and Erika Girardi and , as Tom Girardi sunk deeper into the federal criminal investigation that later ended in conviction, Wilkes emerged as Erika's social media and business adviser, attorney — and lender.

d. Acting on its own initiative, the United States Attorney's Office for the Central District of California dismissed the charges against Psaila on September 29, 2021.

e. From and after September 29, 2021, Erika Girardi – upon advice and counsel from Wilkes and their co-conspirator, Evan Borges – continued to accuse Plaintiffs of criminal conduct by contending that the U.S. Attorney dismissed the criminal charges "on a technicality."

f. In February 2024, Wilkes and Borges publicly adopted and endorsed Erika's lies in declaring to a nationwide, ABC television audience that Wilkes was funding Erika to the tune of a couple of million dollars and that Erika had informed them during claimed "privileged" conversations of facts that proved Erika was innocent of wrongdoing which meant to the show business audience that should have been Plaintiffs' client base , that Erika continued to accuse Plaintiffs of criminal conduct.

Furthermore, Wilkes will not contest the scandalous decades during which the California Bar Association[1], multiple attorneys and judges, and the staffers at the Girardi Keese Law Firm complicitly in allowing Tom Girardi to make victims of his clients and spend over $25,000,000 of his clients'

---

[1] See, https://www.calbar.ca.gov/news/state-bar-california-releases-reports-detailing-past-unethical-conduct-handling-girardi-complaints,

funds on Erika

## II. ALLEGING WHAT IS TRUE AND CAN BE PROVEN TO A JURY IS NOT SCANDALOUS.

For a factual allegation to be scandalous, it must be obviously false and unrelated to the subject matter of the action. The facts may be unpleasant but the same is true of many facts of life which are entitled to be pleaded as relevant to a cause of action. *Silberman v. Premier Beauty & Health LLC*, No. 1:20-CV-21984, 2021 WL 4197285, at *2 (S.D. Fla. Sept. 15, 2021).

Here, every "scandalous" fact that Plaintiffs allege are related and connected to Wilkes tortious conduct and bear an important relationship to Plaintiffs' claims and Wilkes' willing agreement to conspire with Erika to deny Plaintiffs the exoneration and compensation that Plaintiffs deserve. Thus, while Wilkes' conduct, as a member of ten state bar associations, is scandalous in the generic meaning of the word, Plaintiffs' allegations are neither "scandalous" nor "impertinent" because they are true and provable and pertain to Plaintiffs' legal theories of recovery and as factual explanations of Wilkes conduct. See, *126th Avenue Landfill, Inc. v. Pinellas County,* No. 8:09–CV–307–T–33TBM, 2009 WL 1544030, at *2–3 (M.D.Fla. June 3, 2009).

Generally, motions to strike allegedly immaterial matters are not favored and such motions will not be granted unless the allegations are so immaterial that they can have no possible bearing on the issues to be litigated. *S.D. v. St. Johns Cnty. Sch. Dist.,* No. 3:09-CV-250-J-20TEM, 2009 WL 1941482, at *1 (M.D. Fla. July 7, 2009). Here, Plaintiffs' allegations emanate from Tom Girardi's twenty plus years of client embezzlement and Erika's Tom Girardi-inspired accusations that Plaintiffs committed credit card fraud in billing their creative and manufacturing services to the Girardi Keese credit card that Tom Girardi and American Express assigned to Erika.

When Wilkes began to actively advise his long-time friends, Erika and Tom, in 2019 – almost two years before the U.S. Attorney came to understand the falsity of Erika's and American Express's

criminal complaints – Wilkes' motives and actions in becoming Erika's business and legal agent are as relevant as Erika's 2016 lies. As alleged, Wilkes could have simply represented Erika in compliance with Florida's Rules of Professional Conducts. Florida Rules prohibited Wilkes from financing his client, but he did. Wilkes had no duty to speak at all about Erika's misconduct, but when he (and Borges) did choose to speak, he/they had a duty to speak the truth.

Thus, nothing in Plaintiffs' "scandalous" allegations, as defined in Rule 12(f), refers to any allegation that "***unnecessarily*** reflects on the moral character of an individual or states anything in repulsive language that detracts from the dignity of the court." *Khalid Bin Talal v. E.F. Hutton & Co.,* 720 F.Supp. 671, 686 (N.D.Ill.1989) (*quotations and citations omitted* ).

One would hope that Plaintiffs' allegations offend Wilkes' sensibilities. No defendant enjoys being held accountable for his/her/its tortious conduct even when he/she knows what he/she did was wrong. Thus, to strike allegations as unnecessarily "scandalous," the allegations must be obviously false and unrelated to the subject matter of the action. The facts may be unpleasant for Wilkes to have on the record, and they certainly contain charges of reprehensible conduct, but the same is true of many facts of life which are entitled to be pleaded as relevant to a cause of action.

In *S.D. v. St. Johns Cnty. Sch. Dist.*, supra, at *4, this Court used allegations concerning a divorce for adultery in an automobile accident case as an example of words that would be stricken as scandalous. Here, every fact alleged is objectively proven (or provable) by prior adjudications or admissions of co-conspirators. Each fact alleged is like a single strand in a twisted cable: while a single strand may snap by itself, the many facts woven together create an unbreakable cable of tortious conduct. As this Court has often held, to strike allegations as immaterial or impertinent, they must have no possible bearing on the relevant issues. *Sch. Bd. of Osceola Cnty., Florida v. Gallagher Benefit Services, Inc.*, No. 6:21-CV-1979-ACC-LHP, 2022 WL 19914514, at *13 (M.D. Fla. June 22, 2022).

Every fact alleged bears on the relevant issues in this case. Likewise, in that Wilkes objections

are fact-based, the legal and factual strength of Plaintiffs' allegations are better addressed with adversarial briefing on a motion for summary judgment after discovery has been completed. See, e.g., *Vance v. Target Corp.,* No. 3:24-CV-942-MMH-LLL, 2024 WL 6994942, at *2 (M.D. Fla. Dec. 13, 2024)

## III. WILKES' ABUSE OF PROCESS.

Plaintiffs' SAC alleges a series of abusive acts taken by Wilkes after process issued in several lawsuits and that the purpose of Wilkes' abuses was to extort/intimidate Plaintiffs from pursuing exoneration and compensation for Erika's bad acts. Plaintiffs' SAC alleges every element that an abuse of process claim requires. That Wilkes is adept at engaging multiple actions in multiple courts to abuse the processes of law is confirmed in *In re Fundamental Long Term Care, Inc.*, 81 F.4th 1264, 1327–28 (11th Cir. 2023), a 139-page opinion that detailed Wilkes' abuse of the bankruptcy process, his mis-use of state and federal courts, including his frivolous appeals to the Eleventh Circuit, over a ten-year timeframe, and all in a vain attempt to garner more contingent fees than the law allowed. In short, Plaintiffs' abuse of process counts state a case on all points with *In Re Fundamental*.[2]

In his motion, Wilkes argues correctly that Plaintiffs' allegations do not prove that Wilkes engaged in processes used for purposes other than what the law authorizes. Attorneys who abuse process generally follow procedural forms from which they can appear to embrace propriety – just as Wilkes did in *Fundamentals* and as he and Wilkes did in the Girardi bankruptcy cases (and as alleged in the SAC). In *Fundamental,* Wilkes filed an appeal, a normal-looking act. Yet, in the context of the many acts and many cases that the Eleventh Circuit analyzed, it found that Wilkes' appeal was

[2] Sadly, the only "sanction" that Wilkes suffered for ten years of misconduct was that Wilkes' client, the Estates, had to pay attorneys' fees to the Bankruptcy Trustee's attorney for defending Wilkes' frivolous appeals. Bluntly, it does not speak well for the legal profession that Wilkes could blatantly game the system and suffer so little consequences other than his failure to reap bounteous fees at the expense of the Estates he theoretically represented. See, Doc. 70 in Case No. 8:22-cv-01041.

frivolous and an abuse of process. Here, Plaintiffs have alleged sufficient facts for a jury to find that Wilkes abused processes in a Florida state court and federal district, bankruptcy, and appellate courts. Without legal or factual bases, motions, claims, appeals, etc. become abuses of process. See, *de Vaux v. Westwood Baptist Church*, 953 So. 2d 677, 683 (Fla. 1st DCA 2007) holding that:

> Florida lawyers have both ethical and statutory duties not to file actions, including appeals, that are not supported by the application of the governing law. The ethical duty prohibiting “frivolous” proceedings is imposed by rule 4–3.1, Rules Regulating The Florida Bar (2006).

In *Verdon v. Song*, 251 So. 3d 256 (Fla. 5th DCA 2018), Husband alleged that Wife referenced her criminal charges and implicitly demanded use of his credit card or she would do something that “he could not fix.” Husband’s complaint alleged that she made this threat in an attempt to extort Husband after the State had filed formal charges against him, and that Wife thereafter filed a false affidavit and a request for prosecution. These allegations sufficiently alleged an abuse of process claim because Wife attempted to extort Husband by using the pending criminal proceedings to gain use of his credit card. Id. at 258–59.

In *Svistina v. Elbadramany*, No. 22-CV-20525, 2023 WL 34642, at *5 (S.D. Fla. Jan. 4, 2023), Svistina allegedly initiated a criminal case without basis in law or fact to induce Elbadramany to settle a civil case. This stated an abuse of process.

Here, Plaintiffs allege that Wilkes initiated bogus bankruptcy proceedings, bogus nationwide claims that Erika was innocent of wrongdoing against Plaintiffs, and bogus motion practice – all as alleged in the SAC – in order to coerce Plaintiffs into abandon their lawsuits seeking exoneration and compensation.

In *Morante v. Girardi*, et al., Case No. 24-ca-015118 in the Miami-Dade Circuit Court, Wilkes started out as Defendants’ sole attorney and proceeded to obstruct resolution of his own Motion to Dismiss. Then, he brought in other counsel to do the same. In the California cases, Wilkes appeared

on national television to proclaim his client's innocence, but never entered an appearance while directing co-conspirator Borges to obstruct and delay. All of this is appropriately alleged in the SAC and all of these acts occurred after process issued

## IV. LITIGATION PRIVILEGE DOES NOT PROTECT WILKES.

To successfully invoke litigation privilege as a defense, the acts occurring in the course of a judicial proceeding must be in front of a judicial officer or in pleadings or documents filed with the court. For conduct outside of a judicial proceeding or formal discovery, only a qualified privilege applies. *Okaloosa Properties Mgmt., LLC v. Hoffman, Larin & Agnetti, P.A.*, No. 3D24-1502, 2026 WL 2503165, at *3 (Fla. 3d DCA Aug. 26, 2026).

*Okaloosa Properties* involved a fact situation very similar to this case. The defendant attorneys seeking litigation privilege protection were involved in a scheme that involved overlapping matters of litigation and the *res gestae* of the case focused on a series of phone calls that implemented the attorneys' scheme to tortiously interfere with an eminent domain proceeding between FDOT and Okaloosa Properties. Id. at *2.

Because Okaloosa Properties' amended complaint confirmed that the phone calls did not reflect that the alleged acts occurred during the course of a judicial proceeding, the Third DCA held that litigation privilege was not a defense. Id. at *4. As every Florida Supreme Court case has held, litigation privilege exists to protect lawyers who advocate their causes **in court**. *Arko Plumbing Corp. v. Rudd*, 230 So. 3d 520, 525 (Fla. 3d DCA 2017).

Here, Plaintiffs allege that Wilkes was not an attorney of record in the California cases, but controlled Borges behind the scenes, and that the Wilkes/Borges nationwide broadcast had only to do with perpetuating Erika Girardi's lies about Plaintiffs. See, *Ball v. D'Lites Enterprises, Inc.*, 65 So. 3d 637, 639–40 (Fla. 4th DCA 2011), holding that defamatory statements at a press conference do not have any functional tie to a judicial proceeding; see, also, *Pace v. Bank of New York Mellon Tr. Co.*

*Nat'l Ass'n*, 224 So. 3d 342, 345 (Fla. 5th DCA 2017) holding that the process server's alleged comments to the tenants were unnecessary to effectuate service of process and, therefore, not covered by the litigation privilege.

Moreover, in attempting to invoke the litigation privilege, Wilkes' Motion to Dismiss fails to claim which acts alleged by Plaintiffs are protected by the litigation privilege. This is fatal. See, *Diamond Resorts Int'l, Inc. v. Aaronson*, 371 F. Supp. 3d 1088, 1112–13 (M.D. Fla. 2019) which denied "Defendants' wholesale adoption of Florida's litigation privilege" and directed that "the availability of the privilege will need to be determined at trial on the specific circumstances of the statements."

**V. WILKES ULTERIOR MOTIVES IN PERVERTING PROCESSES.**

Plaintiffs have alleged that Wilkes, like the attorneys in the tobacco cases, conspired with his client and debtor (Erika) to abuse process by, among other non-protected acts, to publicly proclaim to Erika's fanbase and employer that Plaintiffs were the criminals, and that Erika was not See, e.g. *United States v. Philip Morris USA Inc.*, 566 F.3d 1095 (D.C. Cir. 2009 and related cases. Thus, Wilkes ulterior motive was, at a minimum, three-fold: a) to place Erika beyond sworn examination; b) to protect Wilkes' creditor position re: Erika; and c) to coerce Plaintiffs to surrender their claims for exoneration and compensation.

In denigrating Plaintiffs' allegations of Wilkes's ulterior motives, Wilkes casually states that they "do not rise to the level of abuse of process." Wilkes cites no law in support. Yet, Florida law unequivocally confirms that ulterior motives include a) misusing process to obtain funds and unwarranted concessions [see, *Gause v. First Bank of Marianna*, 457 So. 2d 582, 583 (Fla. 1st DCA 1984)]; and b) using litigation to cause a plaintiff undue and inordinate expenditures of time and money, i.e., harassment. See, *Peckins v. Kaye,* 443 So. 2d 1025, 1026 (Fla. 2d DCA 1983).

In *Verdon v. Song*, supra, at 259 (Fla. 5th DCA 2018), Wife attempted to extort Husband by

using the pending criminal proceedings to gain use of his credit card. Here, Erika, Wilkes, and Borges used bogus bankruptcy claims[3] and dilatory litigation practices to coerce Plaintiffs from rightfully pursuing their redress of grievances for exoneration and damages after Erika's bogus criminal claims were dismissed by the U.S. Attorney. As Plaintiffs have alleged, Wilkes was not entered as counsel in the Girardi bankruptcy cases, but he confessed, along with Borges, on nationwide television, that he financed Erika (in violation of the Rules of Professional Conduct), hired and directed Borges to initiate legal processes without reasonable basis in law and fact. *Scozari v. Barone*, 546 So. 2d 750, 752 (Fla. 3d DCA 1989).

Instead of righting things with Plaintiffs through apology and payment of lost earnings after the U.S. Attorney dropped the criminal charges, Wilkes, negligently and/or willfully, adopted and endorsed Erika's lies and waged his corrupt defense in the Courts and on social media, including, coaching Erika Jayne, in her role as a Real Housewife of Beverly Hills and as a social media celebrity, to commit perjury by continuing to accuse Plaintiffs of criminal conduct. Thus, Plaintiffs have more than adequately alleged the perversion of legal processes going on for years after the criminal legal processes that Erika initiated against Psaila ended. See, e.g., *O'Malley-Gordon v. United States*, No.

[3] At the final hearing – after process issued – on a motion delayed for over two years by Wilkes' abusive tactics, and where Wilkes and Borges hijacked that motion as a method to portray Erika as a defender of TG's defrauded clients, the Court admonished Borges for making frivolous arguments based on made up facts and no law. The following quotes are from Doc. 1902 in 20-bk-21022:

THE COURT: "You have no evidence of any of this, isn't that correct?" [Page 10:3-4]

THE COURT: "-- and you have your opposition, but your opposition basically states no opposition because you're talking about facts which you are not attesting to. You recognize that." [Page 11-12:23-1]

MR. BORGES: "—this is not evidence. [Pages 12-13:24-3]

THE COURT: "I'm not sure we're on the same wavelength. Do you not understand what I am saying? You are stating facts in here that you need more time, and so forth. Where is your evidence of that? Just saying it doesn't make it true, does it? Isn't that what declarations under penalty of perjury are about?" And I'm surprised that you're surprised at that proposition, that in order to state facts in here you need to say it under penalty of perjury. Does that surprise you, that concept? [Page 13: 9-17]

218CV533FTM29NPM, 2019 WL 4673814, at *2 (M.D. Fla. Sept. 25, 2019).

## VI. WILKES FRAUDULENTLY CONCEALED HIS KNOWLEDGE THAT PLAINTIFFS DID NOT COMMIT CRIMINAL ACTS VICTIMIZING ERIKA.

In alleging that Wilkes fraudulently concealed Erika's tortious conduct in accusing Plaintiffs of being criminals, Plaintiffs rely on this Court's decision in *Cramer v. Palm Ave. Partners, LLC*, 672 B.R. 517, 547 (M.D. Fla. 2025), *reh'g denied*, No. 8:18-CV-1026-CEH, 2026 WL 1295839 (M.D. Fla. Mar. 24, 2026) where this Court confirmed that in order to successfully prevail on a fraudulent concealment case, a plaintiff must establish: (1) the defendant's successful concealment of the cause of action and (2) fraudulent means to achieve that concealment.

Here, Defendant Wilkes and his co-conspirators successfully concealed Erika Girardi's tortious conduct when they spoke to a nationwide television audience about Erika's "privileged" statements to them that proved her innocence and that, by implication, Plaintiffs were crooks. In intentionally speaking to an audience that included those in the entertainment industry that would have hired Plaintiffs but for the belief or suspicion that Plaintiffs were credit card fraudsters, Wilkes and Borges intentionally or negligently misrepresented the truth about Plaintiffs while fraudulently and/or negligently concealing the truth.

Wilkes' and Borges' conduct in the 2024 Broadcast and thereafter breached a duty to Plaintiffs that is well established in the common law of fraud: though a party may have no duty to speak, if he does assume to speak, he must make a full and fair disclosure as to the matters about which he assumes to speak. He must avoid a deliberate nondisclosure. *Prentice v. R.J. Reynolds Tobacco Co.*, 338 So. 3d 831, 839–40 (Fla. 2022). Moreover, as alleged, Erika owed a fiduciary duty to Plaintiffs and so did Erika's primary agent and aider-abettor, Wilkes.

Indeed, Plaintiffs have pleaded their causes of action in the SAC equally as well as the Plaintiffs did in *Cramer*. Whether Plaintiffs can prove the facts giving rise to Defendant Wilkes'

liability is a matter for the jury to decide. See, *Taubenfeld v. Lasko*, 324 So. 3d 529, 540–41 (Fla. 4th DCA 2021) holding that to state cause of action for aiding and abetting the breach of a fiduciary duty, a plaintiff must plead facts establishing: a) a fiduciary duty on the part of a primary wrongdoer; b) a breach of that fiduciary duty; c) knowledge of the breach by the alleged aider and abettor; and d) the aider and abettor's substantial assistance or encouragement of the wrongdoing.

Plaintiffs have alleged fraudulent concealment and conspiracy to fraudulently conceal.

**CONCLUSION**

In filing this Response, Plaintiffs have generally not responded to Wilkes' uncited arguments. Indeed, a legal argument without citation to legal authority is no argument at all. Thus, in summation, Plaintiffs appreciate the Court's patience in allowing a first and second amendment to their complaint. Plaintiffs recognize the uniqueness of their situation and certainly wish that they were not in it. However, they are determined to see if the legal system that allowed people like Tom and Erika Girardi to steal millions of dollars from Girardi Keese clients is able to provide a forum for Plaintiffs to present their case to a jury of peers.

While Plaintiffs were not victims of a mass tort, as were the victims from whom the Girardi's stole hundreds of millions of dollars, they were the victims of very specific torts instigated by Tom and Erika Girardi when the Girardi's were running out of stolen funds. It is time, after all these years, for Plaintiffs to finally get their day in court. Wilkes' motion to dismiss must be denied.

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on August 31, 2026, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

By: *Isl Bruce B. Bealke*.